**SCOTT BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**CAMERON PERLA, OSB #241820**
Assistant United States Attorney
U.S. Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: 503.727.1000
Email: Cameron.Perla@usdoj.gov
Attorney for the Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **DEREK BLUFORD,**<br><br>Plaintiff,<br><br>**v.**<br><br>**UNITED STATES OF AMERICA, et al.,**<br><br>Defendants. | Case No.: 3:22-cv-00811-SI (Lead)<br>Case No.: 3:22-cv-01005-SI (Trailing)<br><br>DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SPOLIATION |

Defendants Michael Carvajal, Melissa Rios-Marques, Dewayne Hendrix, Andrew Cooper, Patricia Ayala-Pena, Brent Cray, Anthony Rodrigues, Brian Sponseler, Andrew Grasley, Cynthia Campagna, and David Prock and the United States ("Defendants"), hereby submit this Response to Plaintiff's Motion for Spoliation. The Defendants contest Plaintiff's characterization of the alleged video

footage concerning his time at FCI Sheridan, dispute his assertation that a valid litigation hold was in place to preserve any evidence, deny that their counsel has conferred with Plaintiff regarding his alleged missing personal property, and contends that Plaintiff is not entitled to have factual determinations made six months before the close of discovery, is not entitled to a default judgment, and the Court should deny Plaintiff's request or to bar the Defendants from raising any valid defenses concerning this suit.

## Introduction

Plaintiff Derek Bluford ("Bluford") has filed a motion for spoliation and/or motion for evidentiary sanctions six months before the end of factual discovery. Bluford asserts that the individual defendants and the Bureau of Prisons ("BOP") intentionally destroyed video surveillance footage from FCI Sheridan while he was incarcerated along with his personal property. As a remedy, Bluford requests that the Court accepts the facts of his complaint as alleged and that the Defendants be barred from raising any defenses relating to his claims. For supporting evidence, Plaintiff, who has filed this suit Pro Se, claims that his father-in-law Cyrus Zal, who purports to present himself as Plaintiff's attorney despite no formal appearance or ever engaging with Defense counsel, allegedly sent a series of self-proclaimed "Litigation Hold" letters to BOP while Plaintiff was incarcerated at FCI Sheridan to preserve video footage and other requests. For evidence, Plaintiff attaches declarations from himself and Mr. Zal stating the letters were sent. Through this opposition brief, Defendants will demonstrate the following:

(1) BOP was never put on notice to preserve the alleged evidence within its 10-day retention period;

(2) Plaintiff's purported "Litigation Hold letters" from his father-in-law are not valid litigation holds;

(3) Plaintiff has not demonstrated these letters were sent to BOP generally or the appropriate BOP Legal Department specifically;

(4) These letters are internally inconsistent and vague with respect to both their validity and requested information to preserve;

(5) Plaintiff has not conferred with Defense Counsel regarding his alleged missing personal property;

(6) Plaintiff has not filed any motion to compel or sought lesser sanctions before filing this motion for spoliation; and

(7) Plaintiff has failed to meet the legal standard for sanctions under Rule 37(e) and relevant Ninth Circuit authority.[1]

**Factual Background**

On April 20, 2021, Bluford pleaded guilty to one count each of wire fraud, engaging in monetary transactions involving criminally derived proceeds, destruction, alteration, or falsification of records in a federal investigation, and false statements. See Declaration of Oscar Trinidad ("Trinidad Decl.") at ¶ 16. Bluford was

[1] Plaintiff's motion should also be denied for failure to comply with Civ. L.R 7-1 and Fed. R. Civ. P. Specifically, LR 26-3(b)(1): motion is over 35 pages and is 11423 words, LR 10(c): footnote is less than 12-point font requirement, and LR 7-2(b): Certificate of compliance is deficient and incorrect due to failure to move of oversized brief (and word-count is incorrect).

sentenced to federal prison and eventually transferred to FCI Sheridan in Oregon, where he was incarcerated from May 20, 2021, until August 9, 2022. Id. at ¶19. On September 13, 2021, Plaintiff was taken to Salem Hospital after being unresponsive and falling unconscious. He was diagnosed as having contracted COVID-19 and sent back to FCI Sheridan that evening. On January 22, 2022, plaintiff was sent to the Special Housing Unit ("SHU") in administrative detention status and stayed there until August 9, 2022. Id.

## A. BOP'S EVIDENCE PRESERVATION REQUIREMENTS

### 1. BOP's Video Retention Period

Under BOP Program Statement 1240.05, Records and Information Management Programs, Bureau staff utilize the Bureau of Prison's Records and Information Disposal Schedule (BOP-RIDS) as the central authority to ensure adequate coordination of records management. Trinidad Decl. at ¶ 3. The relevant disposition authority under BOP-RIDS is "SIS and Non-SIS Video Surveillance Recording at Federal Correctional Faculties" known as job number "Nl-129-10-02" and more specifically under "Item 5." N1-129-10-02 was signed by the BOP agency representative on May 27, 2010. *Id.*

Attached as Exhibit A to the Declaration of Oscar Trinidad is a correct and accurate copy of BOP-RIDS N1-129-10-02: SIS and Non-SIS Video Surveillance Recording at Federal Correctional Facilities. BOP-RIDS N1-129-10-02 states in relevant part: "BOP facilities include a system of surveillance protocols, where video recording is one of many elements. Other components of overall surveillance include

movement sensors, informants/witnesses, observation posts, towers, mail and phone monitoring, controlled movement, property inventory, cell shakedowns, and routine inmate counts and body searches among others. Because of the comprehensive nature of ongoing surveillance procedures and operations, video recordings of uneventful content require a limited retention time interval. In addition, video content already established as relevant or applicable to an event category or case is preserved under a separate record keeping authority." "Category events" refer to incidents involving use of force or events that trigger criminal investigations, not inmate deaths resulting from medical issues. *Id.*

BOP-RIDS N1-129-10-02 states the "Disposition" is temporary and that video surveillance recordings are retained for only 10 days after the recording date. *Id.* BOP institutions have video surveillance automatically erased primarily due to storage limitations. However, BOP institutions follow the BOP retention policy of 10 days for video surveillance. *Id.* BOP staff have conducted a diligent search for any videos related to the alleged events involving Plaintiff and have thus far not discovered any videos. *Id.*

**2. BOP Litigation Holds**

The decision to issue a litigation hold is primarily made by the receiving BOP Consolidated Legal Center. Because of the unique nature of correctional settings, not every incident or significant event prompts a litigation hold. The BOP is required to issue a litigation hold to preserve relevant documents, Electronically Stored

Information (ESI), and/or tangible items only when litigation is reasonably anticipated or already pending. (Trinidad Decl.).

**3. Letters Received by Plaintiff's Prior Counsel**

Plaintiff's father-in-law alleges he sent a letter to BOP on September 16, 2021. ECF 135 at 175. This letter was not addressed to the BOP Consolidated Legal Center for FCI Sheridan, nor did either meet the standard to trigger a litigation hold. Even if the department received a request, that does not mean the request automatically prompts any specific preservation requirement or holds related to video surveillance. Plaintiff contracted COVID-19, fainted, and was taken to a local hospital and was sent home the next day. This event would not trigger a litigation hold to be in place. As a result, no video surveillance would have been requested to be preserved since it was already long past the retention period and BOP was never given proper notice since these letters were never received.

**4. BOP Special Housing Unit (SHU)**

Special Housing Units (SHUs) are housing units in Bureau institutions where inmates are securely separated from the general inmate population and may be housed either alone or with other inmates. Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public by providing alternative housing assignments for inmates removed from the general population. Trinidad Decl. ¶ 20.

Under BOP's Program Statement 5270.12, "Special Housing Units," there are two forms of inmate special housing: Administrative detention status or disciplinary

segregation status. Administrative detention status is an administrative status which removes an inmate from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public. Administrative detention status is non-punitive and can occur for a variety of reasons including safety or medical concerns. *Id.*

Plaintiff was in the Special Housing Unit under Administrative detention for non-punitive reasons. Decl. Plaintiff was in FCI-Sheridan's Special Housing Unit from January 25, 2022, to August 9, 2022. During this period, Plaintiff was not continuously confined to his room. There are also medical evaluations from this time and references to Bluford being released during this period. Trinidad Decl. ¶ 23.

**5. Plaintiff's Administrative Tort Claim (SF-95)**

A suit against the federal government under the FTCA is not permitted unless an administrative claim has first been filed with the appropriate federal agency. The Plaintiff in this case did not file an administrative tort claim against the BOP relating to Bluford's allegations until May 31, 2022, over a year after the September 13, 2021, incident. ECF 135 at 71. Plaintiff's SF-95 Tort Claim was the first notification wherein BOP anticipated actual litigation, and any video surveillance from the prior year had long since been overwritten pursuant to BOP's 10-day retention policy. Trinidad Decl. ¶ 7.

**Procedural History and Discovery**

On June 6, 2022, Plaintiff filed a complaint against the Defendants. ECF 2. After a series of extensions, motions, stays, and amendments, Plaintiff filed his Third

Amended Complaint on October 9, 2025. ECF 105. A Scheduling Order was issued on June 15, 2026, which stated that "fact discovery is to be completed no later than February 26, 2027." ECF 133. Plaintiff sent several requests for production of documents. Pertinently, Bluford's RFP No. 1 served on Defendants in July 2026 requested "All Video Surveillance Footage from FCI Sheridan for the period of June 1, 2021 through August 31, 2022 ...[.]" ECF 135 at 140. Defendants responded that, subject to a litany of objections, "[ ] Defendants are not in possession of any video surveillance footage from the time period requested." *Id.*

On August 14, Plaintiff and defense counsel conferred about video surveillance issues. Plaintiff and defense counsel did not discuss or confer on any issues relating to personal property or missing belongings while Plaintiff was incarcerated at FCI Sheridan. On August 17, 2026, Bluford filed his motion for spoliations and sections.

**Legal Standard**

The Federal Rules of Civil Procedure regarding sanctions are contained with Rule 37(e). The pertinent section reads as follows:

"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment."

A court is permitted to impose the sanction of dismissal or default under Rule 37 only in "extreme circumstances" where the violation is "due to willfulness, bad faith, or fault of the party." *Allen v. Exxon Corp.* (*In re Exxon Valdez*), 102 F.3d 429, 432 (9th Cir. 1996). A party seeking sanctions for spoliation of ESI bears the burden of proof. *Ryan v. Editions Ltd. W.*, Inc., 786 F.3d 754, 766 (9th Cir. 2015); see also *Colonies Partners L.P. v. Cnty. of San Bernardino*, No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, at *5 (C.D. Cal. Feb. 27, 2020) (holding the party arguing that spoliation has occurred has the burden of showing that evidence was in fact destroyed or not preserved).

## Argument

### I. Plaintiff Did Not Confer with Defense Counsel About His Alleged Loss Of Personal Property That Portion Of The Motion Should Be Stricken.

Rule 37(a)(1) requires certification that the moving party "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Under the local rules also require that "the parties must discuss each claim, defense, or issue that is the subject

of the proposed motion" before filing with the court. LR-7-1(a)(2). The remedy for failing to conferral is to deny the motion requested. *See Van Westrienen v. Americontinental Collection Corp.*, 189 F.R.D. 440 (D. Or. 1999) (denying motion holding plaintiff failed to comply with obligation to make good faith effort to resolve discovery dispute before filing a motion); *Shuffle Master v. Progressive Games*, 170 F.R.D. 166 (D. Nev. 1996) (denying motion where counsel failed to provide a detailed certification of conference and failed to confer in detail with opposing counsel); *Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995) (denying motion finding counsel's single letter to opposing counsel failed to satisfy the good-faith conferment requirement).

Defense counsel did confer with Plaintiff on August 14 to discuss the issue of potential video surveillance footage. Additionally, this Court noted "Plaintiff's concern regarding preservation of video evidence" by allowing "if no resolution can be reached between the parties, [ ] a motion filed with the Court." However, there was no discussion of Plaintiff's alleged lost personal property set forth in his Motion for Spoliation nor was Plaintiff granted leave to file a motion concerning such property.

Because this issue was not properly conferred or permitted, these arguments and requests regarding personal property and non-video evidence should be stricken from the motion and Plaintiff should be denied relief sought.

## II. Plaintiff Has Not Established Defendants Have Failed To Preserve Relevant Evidence Which Warrants Sanctions.

### a. Plaintiff Has Not Demonstrated The Alleged Letters Were Ever Sent To Or Received By BOP or Its Legal Department.

Putting aside their validity as a litigation hold, Plaintiff claims these letters were sent to BOP by Plaintiff's father-in-law Cyrus Zal ("Zal"). Zal's declaration states that he "was retained by Plaintiff Derek Bluford to represent him in connection with legal claims and issues arising from events that occurred while Plaintiff was incarcerated at FCI Sheridan." ECF 135 at 175. While Zal has an active California bar license; he has not made any formal appearance in any of Plaintiff's underlying cases, nor has he engaged with defense counsel. This is despite living in the same household as Plaintiff, which he also listed as his firm's address. Zal claims that he "investigated claims" relating to Plaintiff and "due to the obvious abusive and illegal mistreatment of Plaintiff…it became evident that Litigation Holds should be put on evidence […] ." *Id.* at 176.

Plaintiff has not introduced any evidence that Zal has assessed to come to that conclusion or what investigations Zal did. Zal claims he "prepared and transmitted" multiple letters and states that copies are attached. There is no certificate of service or mailing receipts demonstrating any letters were sent. *Id.* at 180-194. However, both Plaintiff and Zal acknowledge that no one responded to any of these allegedly sent letters.

Plaintiff alleges a letter was sent on September 16, 2021. Plaintiff also alleges a letter was sent on September 26, 2021. This second letter makes no mention of the

first letter and contains most of the same allegations and statements. A third letter references the September 26th letter but not the 16th. Another letter is dated February 1, 2022, and makes no mention of all of the previous letters at all. The next letter, the 5th letter, dated June 30, 2022, mentions that Zal has sent "three previous letters for "litigation holds" that are still in effect." It does mention which dates the previous letters were sent. The sixth letter, August 12, 2022, mentions "four previous letters" without mentioning which dates. This inconsistency creates further dispute beyond even Defendants' position that these letters were never sent or received by BOP and what they entail. Plaintiff's own "represented attorney" conveyed to BOP that at most four of the six letters were sent, if any.

**b. The Contents Of The Alleged Litigation Hold Letters Are Vague and Overbroad With Respect To What They Are Requesting And What Type Of Litigation Is Pending.**

Arguendo, the "litigation hold" requests are so broad and vague to be meaningless for retention purposes. Blanket requests for video footage while Plaintiff was in the SHU for 8 months are neither specific nor tailored to litigation. First, there is no video footage inside the SHU cells so any allegations related to events inside the room would not have footage. Trinidad Decl. ¶ 10. Additionally, there is no audio for the surveillance so any alleged conversations would also not have been recorded. Id. at ¶ 9. Finally, that amount of video footage would take up significant bandwidth and take significant personnel to assess for privilege and other concerns. These concerns have been relayed via the responses to the requests Plaintiff has already made. ECF 135 at 140.

#### c. Plaintiff Has Not Demonstrated The Extreme Circumstances Necessary To Justify The Remedies Requested.

Courts are permitted to impose sanctions of dismissal or default if "extreme circumstances" demonstrate violations "due to willfulness, bad faith, or fault of the party." *Allen v. Exxon Corp.*, 102 F.3d 429, 423. In *Gregory v. Montana*, 118 F.4th 1069 (9th Cir. 2024), the Ninth Circuit also recently confirmed that when Rule 37(e) applies, it precludes invocation of the court's inherent authority to issue sanctions. *Id.* at 1080. The Ninth Circuit in *Gregory* denied Rule 37(e) sanctions relating to the same circumstances at issue here, i.e. the auto-deletion of video surveillance footage relating to a law enforcement incident. "Rule 37(e)(2) states that, before the court may impose one of the listed sanctions, it must first find that "the party"—meaning the "party" who "failed to take reasonable steps to preserve" the information—"acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). On its face, that is a demanding specific-intent standard, and purposely so. The advisory committee notes confirm that the amended rule was specifically intended to abrogate "cases such as *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.

[T]he district court specifically rejected even Gregory's lesser argument that the loss of the footage resulted from "gross negligence on the part of the State and its employees" and found that "Gregory cannot sustain her burden to establish gross negligence or willfulness on the part of the State." The district court found only that

the State's actions amounted to "recklessness," but that is not enough to authorize the severe sanctions covered by Rule 37(e)(2) and imposed by the district court here. Accordingly, we conclude that Rule 37(e)(2) precluded the district court from imposing the sanctions that it did. Id. at 1080.

Here there is not even gross negligence, let alone willfulness, for the Defendants to follow their own internal policies and procedures. The recent case of *Sanchez v. Washington*, Case No. 2:23-cv-01994-LK, 2024 U.S. Dist. LEXIS 200223 (W.D. Wash. Nov. 4, 2024) presents similar facts to the present case. In *Sanchez*, a prisoner claimed he was removed from his cell and "slammed to the ground, which led to the onset of a seizure." *Id.* One month later, petitioner's mother filed a request for information and documents relating to the incident after the footage had been deleted. There, the court held no violation had occurred and further held that even if the prison had a duty to preserve the video, Sanchez failed to show that prison officials acted with the intent to deprive him of the information's use in litigation." *Id.* at 13. See also *Gelazela v. Santa Ana Police Dep't*, No. SA CV 21-1126-HDV (DFM), 2024 U.S. Dist. LEXIS 49750 (C.D. Cal. Feb. 16, 2024) (City Defendants' alleged failure to halt their automatic deletion process, without more, does not rise to a reasonable inference of intent).

It is axiomatic that before a court can even consider whether prejudice exists under Rule 37(e)(1) or whether a party acted with the intent to deprive another party of the information's use under Rule 37(e)(2), it must first determine whether spoliation of electronic information occurred at all. Here, no spoliation has occurred

in this case.

Here, Plaintiff has not demonstrated the alleged letters from his father-in-law were ever sent to FCI Sheridan's Legal Department or BOP in general. Plaintiff has provided no evidence or suggestion that FCI Sheridan took affirmative steps to delete camera footage outside of its auto-destruction period or selectively preserved some coverage but not others.

Even if spoliation were considered in this case, Plaintiff is not prejudiced under subsection (e)(1) because multiple documents have been produced by BOP which establish the exact time frames when Plaintiff was in the SHU, medical records to corroborate his conditions, and interactions with BOP. Additionally, there is zero evidence to suggest FCI Sheridan acted with the intent to deprive Plaintiff of any information to use in this litigation under subsection (e)(2), and on the contrary, Defendants have provided thousands of documents to Plaintiff, and has fully cooperated in discovery at every step in this litigation. Plaintiff's baseless assertion of "fabricated institutional records" is completely unfounded. ECF 135 at 23. Defendants have nothing to hide and believe that any video surveillance (had it been pulled within the 10-day retention period) would only bolster the defense's case and confirm the facts Defendants intend to introduce at trial showing BOP employees were not negligent in any way while Plaintiff was incarcerated at FCI Sheridan.

Plaintiff also references the five factors courts often analyze when considering a dismissal: (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the opposing party, (4)

the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. See *Anheuser-Busch, Inc. v. Nat'l Bev.* Distribs., 69 F.3d 337 (9th Cir. 1995). Defendants note that these factors are applied in cases where a party has failed to comply with a court order (for instance, under Rule 37(b)). Plaintiff is not arguing Defendants violated any court discovery orders against Defendants because none were ever issued or violated.

But even if the Court were to consider those five factors, here they weigh in favor of the Defendants because there is no public interest in resolving this litigation on this motion six months before the close of discovery and even more months from any potential trial. While the Court's need to manage its docket is important, managing its docket includes hearing evidence at trial on the merits of a case, and weighing the credibility of the witnesses at trial, as opposed to dismissing a case two months before trial on an unmeritorious motion for default unsupported by any reliable evidence. The risk of prejudice to the Defendants is obviously immense were the Court to issue a default judgment or sanctions under these circumstances, and the public policy favoring disposition of cases on their merits certainly favors a denial of this motion and proceeding with a trial on the merits. And the fifth and final factor, i.e. whether less drastic sanctions were attempted, certainly weighs in favor of Defendants since thousands of documents of discovery have already been provided and there is six entire months left to resolve any other discovery issues.

Finally, Courts within the Ninth Circuit routinely deny Rule 37(e) sanctions in circumstances where no prejudice and no willful intent to destroy exist. *Newberry v.*

*Cnty. of San Bernardino,* 750 F. App'x 534 (9th Cir. 2018). In *Newberry*, the Ninth Circuit upheld the denial of plaintiff's motion for Rule 37(e) sanctions finding "the missing emails caused no prejudice to the plaintiffs, as the existing record adequately demonstrated that the County officers played only a minor role in the search," and that "the district court properly exercised its discretion in finding spoliation unlikely in this case," and that" terminating sanctions [were] unjustified, given the relative insignificance of any gap in the [Defendant's] production." Id. at 537.

Plaintiff cites to authority that does not support the facts in this case. In *Jones v. Riot Hospitality*, the Ninth Circuit found that an employee that had intentionally deleted text messages between her coworkers after coordinating with them had done so with the intent to deprive the Plaintiff of that information. *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). As the Court explained, "Rule 37(e) does not define "intent," but in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Id.* at 735. Unlike *Jones*, BOP's surveillance footage was automatically overwritten after ten days per its internal policies. There was no intent to deprive, no coordinated effort to delete but an automatic overwritten by a machine. Even if BOP was on notice, which it was not, that the fact some litigation was ongoing would not create a situation whereby all surveillance footage of Plaintiff while he was incarcerated would be preserved via his alleged "litigation hold."

Next, Plaintiff cites *Micron Tech., Inc. v Rambus Inc.*, a Federal Circuit Court of Appeals case dealing with spoliation and prejudice that resulted after 2,200 files

were deleted in a trade secret case. *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011). Again, these deletions were found to be intentional, and the Court looked unfavorably upon such acts. Contrast with here, BOP automatically deleted footage after a ten-day period in accordance with its internal policies and procedures.

Finally, Plaintiff fundamentally mischaracterizes his burden of proof by citing *Hilliard v. Spalding*, a criminal case involving missing sperm samples linked to a pending rape case which was explicitly overturned by the Ninth Ciruict. *See United States v. Dring*, 930 F.2d 687, 694 (9th Cir. 1991) stating that "*Hilliard v. Spalding,* 719 F.2d 1443 (9th Cir.1983) is no longer good law. In *Hilliard* we held that the prosecution's loss of a potentially exculpatory sperm sample would permit the court to set aside any bad faith inquiry and presume prejudice to a defendant accused of rape." This is not a criminal trial, and the Defendants do not bear the burden of proof demonstrating beyond a reasonable doubt that the overwritten footage contained adverse information intentionally destroyed.

## III. Plaintiff's Alleged Facts are Inconsistent and are Contradicted by the Medical Record.

Plaintiff claims that the video footage is the "only objective, contemporaneous evidence" to support his case. ECF 135 at 43. Plaintiff himself has not been consistent with what the video footage would have demonstrated. There are numerous examples but one is illustrative. Plaintiff states in his Third Amended Complaint that "on September 13, 2021, Plaintiff was found barely responsive by staff, became unresponsive, was dropped on the stairs, and required an emergency respiratory

encounter which led to the Plaintiff being taken to the Salem Emergency Hospital via a third-party ambulance." ECF 105 at 10-11. In his declaration for this motion, Plaintiff states that "[o]n September 13,2021, during the COVID-19 outbreak in Housing Unit 2, I was found unresponsive. I was revived by staff and transported by ambulance to Salem Hospital for emergency treatment." ECF 135 at 67. Plaintiff's reliance on declaring all records produced by the Defendants a forgery is not enough to warrant his position of discrediting all other evidence besides his inconsistent narrative of the overwritten video footage without any corroborating evidence. Finally, as there are six months remaining in the discovery process, this motion is far too premature to decide all the facts in this case and to accept Plaintiff's inconsistent viewpoint wholesale.

**Conclusion**

For the aforementioned reasons, the Defendants respectfully request that the Court deny Plaintiff's Motion for Spoliation and not make any factual findings nor bar Defendants from raising any defenses in this action nor grant Plaintiff any other relief sought through his motion.

Respectfully submitted this 31st day of August 2026.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/Cameron Perla*
CAMERON PERLA
Assistant U.S. Attorney

Attorney for Defendants